Bonnie Maud WIGGINS, Individually, and as Administratrix and Substitute Trustee of the Estate of Barney Wiggins, Deceased

v.

James T. LYNN, Individually, and in his capacity as Secretary of the Department of Housing and Urban Development, and George K. Bernstein, Individually, and in his capacity as Interstate Land Sales Administrator of the Department of Housing and Urban Development.

No. B–74–90–CA.

United States District Court,
E. D. Texas,
Beaumont Division.

April 25, 1975.

Order July 31, 1975.

Richard R. Morrison, III, Daniel, Morrison & Strahan, Liberty, Tex., for plaintiff.

Roby Hadden, U. S. Atty., Dennis R. Lewis, Asst. U. S. Atty., Beaumont, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOE J. FISHER, Chief Judge.

### FINDINGS OF FACT

1.

Plaintiff, Bonnie Maud Wiggins, Individually, and as Administratrix and Substitute Trustee of the Estate of Barney Wiggins, Deceased, is a citizen of the State of Texas and originated this action on March 27, 1974, against James T. Lynn, Individually, and in his capacity as

Secretary of the Department of Housing and Urban Development, and against George K. Bernstein, Individually, and in his capacity as Interstate Land Sales Administrator of the Department of Housing and Urban Development, both of whom are citizens of Washington, D. C. This action is based upon diversity of citizenship and involves a federal question, and the Plaintiff seeks injunctive relief against Defendants, restraining the enforcement of Section 1710.14, (24 C.F.R. 1710.1, et seq.), issued by the Defendants effective March 31, 1972.

2.

On April 26, 1974, Defendants answered Plaintiff's complaint and by way of counterclaim filed on May 13, 1974, seek a permanent injunction restraining Plaintiff from continuing to operate in violation of the Act.

On August 29, 1974, Plaintiff answered Defendants' counterclaim and by way of a supplemental petition, seeks a declaration that Plaintiff's subdivisions made the subject of this lawsuit are exempt from registration requirements under the Act.

3.

Plaintiff is the widow of Barney F. Wiggins of Polk County, Texas, who died on November 19, 1970, leaving Plaintiff and four minor children surviving. During the lifetime of the said Barney F. Wiggins and about 1960, he began purchasing and developing tracts of undeveloped real estate in several Southeast Texas Counties, namely, Polk, Liberty, San Jacinto, Tyler and Hardin, that were within easy driving distance of the heavily populated metropolitan area of the Texas Gulf Coast, namely, Houston, Beaumont, Baytown and Pasadena. Plaintiff's subdivisions vary in size from 25 lots in Corrigan Heights to over 3,000 lots in Lake Run-A-Muck. The lots average in size about 50 feet by 125 feet, and the average price range is Three Hundred Ninety-Nine and No/100 ($399.00) Dollars to Five Hundred Nine-ty-Nine and No/100 ($599.00) Dollars per lot.

4.

The Defendant, James T. Lynn, is the Secretary of Housing and Urban Development; the Defendant, George K. Bernstein, is the Administrator of the Office of Interstate Land Sales Registration, Department of Housing and Urban Development.

5.

The following described tracts of land are situated in the State of Texas, are owned by the Plaintiff, and are "subdivisions," as that term is defined by 15 U.S.C. § 1701(3):

(1) Putman's Landing
(2) Wild Country Lake Estates
(3) Thunder Mountain
(4) Nugent's Cove
(5) Crystal Lakes
(6) Eagles Nest
(7) Town Bluff
(8) Wayward Wind Oasis
(9) Corrigan Heights
(10) Hoot Owl Hollow
(11) Hardin's Hideout
(12) Old Stag Ridge
(13) Weaver's Cove
(14) Horseshoe Lakes Estates
(15) Sam Houston Lakes Estates
(16) Old Snake River Lakes Estates
(17) Lake Run-a-Muck
(18) Natasha Heights *

6.

All of the lots in all of Plaintiff's subdivisions are offered for sale as a part of a common promotional plan under the name of Wiggins Land Company, an assumed name under which Plaintiff does business. Plaintiff employs approximately seven (7) clerical personnel and currently uses the services of approximately five (5) or six (6) salesmen who work on a commission basis.

7.

All lots in all subdivisions are sold only after an on-site personal inspection by the prospective purchaser. The salesmen

* A Corporation in which 100% of the stock is owned by the Plaintiff.

have been instructed not to sell lots to anyone having an address outside the State of Texas.

### 8.

The advertising brochures of Plaintiff were directed entirely to the surrounding local market and were distributed either at the Livingston office of Plaintiff or by mailing in response to telephone request. From the records of Plaintiff only one telephone call was received from outside the State of Texas requesting an advertising brochure of Plaintiff for the period of 1969 to the middle part of 1973.

### 9.

Plaintiff has never engaged in any direct mail advertising schemes to sell lots, never engaged in any scheme or plan using the telephone for lot sales and never transported prospective purchasers to subdivisions by any means for the purpose of selling lots.

### 10.

All of Plaintiff's subdivisions are wooded, have dirt and some oil streets, and small lakes suitable only for fishing. There are no marinas on any of the lakes, there are no concrete swimming pools, no golf courses or tennis courts, or other such attractions normally associated with large subdivision offerings designed to attract prospective purchasers from great distances and across state lines.

### 11.

Plaintiff's advertising, consisting of an occasional use of radio ads over Houston station KIKK and small classified ads in the *Houston Post* and *Houston Chronicle*, was concentrated in the northeastern section of Houston. As a result "90% or better" of all lot sales in all subdivisions were to Houston residents. Plaintiff has also advertised in the East Texas Eye, a newspaper owned by Plaintiff with some interstate circulation.

### 12.

Since 1969 there have been 5451 lots sold in Plaintiff's subdivisions, of which only three lots have been sold to two individual purchasers who were residing out of the State of Texas.

### 13.

The Interstate Land Sales Full Disclosure Act was passed by Congress on August 1, 1968, and its effective date was April 28, 1969. On April 28, 1969, all of Plaintiff's subdivisions listed in the stipulations filed herein, with the exception of Natasha Heights, were developed and sales were well under way.

### 14.

On March 29, 1969, the first set of Federal Rules and Regulations was issued by Defendants and Section 1710.10 thereof stated as follows:

1710.10 Exemption. Unless a method of sale, lease or other disposition of land or an interest in land is adopted for the purpose of evasion of the Act, the rules and regulations of this part shall not apply to the following transactions.

(1) The sale or lease of lots where the offering is entirely or almost entirely intrastate.

### 15.

Plaintiff received a letter dated March 23, 1971, from Defendants signed by Mr. Herbert H. George, Director, Administrative Proceedings Division, Office of Interstate Land Sales Registration, wherein Plaintiff was asked to determine whether or not their lot sales program was within the purview of the Act.

### 16.

Plaintiff replied to the letter dated March 23, 1971, by letter dated April 29, 1971, signed by Price Daniel, Jr., Attorney, wherein he stated that the Interstate Land Sales Full Disclosure Act was not applicable to Plaintiff's sale of lots in its various subdivisions because the offering of lots for sale is intrastate and, therefore, exempt under the Act and, more specifically, under Section 1710.-10(1) of the Rules and Regulations. Further, in the reply letter dated April 29, 1971, from Price Daniel, Jr., he inquired of Defendants if they needed any further information regarding Plaintiff's exemption to let Plaintiff know.

**17.**

Defendants did not contact the Plaintiff in any further manner after March 23, 1971, until February 28, 1973, a period of almost two (2) years. Further, during the period between March 23, 1971, and February 28, 1973, the Defendants did not dispute or contest the intrastate exemption claimed by Plaintiff in Plaintiff's letter of April 29, 1971.

**18.**

During the period of time from March 23, 1971, to February 28, 1973, Plaintiff conducted its subdivisions operations based upon a reasonably good faith belief that the Government's failure to contest or question Plaintiff's claim of an intrastate exemption in its letter of April 29, 1971, amounted to the granting of or acquiescence in the claim to such intrastate exemption.

**19.**

On March 31, 1972, the Federal Rules and Regulations were amended by Defendants, and Section 1710.14 was added as follows:

Section 1710.14 Regulatory exemptions—exemption order required—limited offering

(a) The Secretary may exempt from the provisions of this part any subdivision or any lots in a subdivision which otherwise would be covered by the provisions of this part, by issuing an exemption order in writing to the effect that the enforcement of this part with respect to such subdivision or lots is not necessary in the public interest and for the protection of purchasers by reason of the small amount involved or the limited character of the public offering, if he determines that:

(1) The request for the exemption order is limited to a single transaction; or

(2) All of the following criteria are met:

(i) There are less than 300 lots in the subdivision.

(ii) The subdivision is located entirely within one State.

(iii) The offering of lots in the subdivision is entirely or almost entirely limited to the State in which the subdivision is located.

(iv) The use of all advertising and other promotional means, the distribution of which is within control of the developer or his agents, is confined to the State in which the subdivision is located. All use of billboards and similar signs, telephonic methods of communication and direct mail shall be presumed to be within the control of the developer or his agents.

(v) No more than 5 per cent of the sales in the subdivision in any one year will be made to nonresidents of the State in which the subdivision is located.

The March 31, 1972, Federal Rules and Regulations amounted to a substantial change in the method and procedure whereby regulatory exemptions were obtained.

**20.**

The Plaintiff received a letter dated February 28, 1973, from Defendants signed by John R. McDowell, Deputy Administrator of the Office of Interstate Land Sales Registration, which stated, in part, as follows:

"Until the subdivisions are effectively filed as required by Section 1404(a)(1) of the Act, it would be advisable that you cease all lot sales in the noted subdivisions."

This was the first official notice of any type that Plaintiff was not in compliance with the Act since its effective date on April 28, 1969.

**21.**

In March of 1973 and until about November of 1973, Plaintiff, separately and in conjunction with others, made filings pursuant to the Act on the following

subdivisions, which filings became effective:

| SUBDIVISION | OWNERSHIP |
| --- | --- |
| (1) Wiggins Village #1 | Partnership—The Plaintiff and D. Reily |
| (2) Wiggins Village #2 | Partnership—The Plaintiff and D. Reily |
| (3) Reily's Village | Partnership—The Plaintiff and M. G. Reily |
| (4) Reily's Landing Partnership | The Plaintiff and D. Reily |
| (5) Barlow Lakes Estates | Partnership—The Plaintiff and M. G. Reily |
| (6) White Tail Ridge | No longer owned by the Plaintiff |
| (7) Natasha Heights Corporation | 100% of the stock owned by the Plaintiff |
| (8) Lake Run-A-Muck | The Plaintiff |
| (9) Indian Spring Lakes | Corporation—50% of the stock owned by the Plaintiff and 50% by D. Reily |

22.

During said period from March of 1973 until November of 1973 the Plaintiff has, in conjunction with others, filed with the Office of Interstate Land Sales Registration the following subdivisions, which registrations have not become effective:

| SUBDIVISION | OWNERSHIP |
| --- | --- |
| (1) Horseshoe Lakes Estates | The Plaintiff |
| (2) Sam Houston Lakes Estates | The Plaintiff |
| (3) Old Snake River Lake Estates | The Plaintiff |
| (4) Mont Neches | Partnership—The Plaintiff and M. G. Reily |

23.

Hardin's Hideout, a subdivision located in Polk County, Texas, was effectively registered with the Secretary when owned by Jobe Wiggins, and it is now owned by the Plaintiff.

24.

Plaintiff received a letter dated September 7, 1973, from Defendants signed by John R. McDowell, Deputy Administrator of the Office of Interstate Land Sales Registration, regarding Hardin's Hideout which states in part as follows:

"This office accepts your statement that the sales operations of the cap-
tioned subdivisions was probably intrastate during that period."

25.

The Plaintiff received a letter dated November 7, 1973, from Defendants signed by John R. McDowell, Deputy Administrator of the Office of Interstate Land Sales Registration, which states in part as follows:

"We request that you send a letter to all those persons who purchased lots at the subject subdivision prior to the effective date of its filing and subsequent to March 31, 1972, the date the Act became applicable to the subject subdivision."

26.

Plaintiff was selling or offering to sell lots in Lake Run-A-Muck, Old Snake River, Wayward Wind and Natasha Heights Subdivisions on March 31, 1972, without an effective registration with Defendant Lynn, Secretary of Housing and Urban Development. Said Subdivisions of Lake Run-A-Muck, Old Snake River, Wayward Wind and Natasha Heights, each with more than 299 lots were located entirely within Texas and less than five (5%) per cent of the sales in said subdivisions in any one year were made to nonresidents of the State of Texas.

27.

The Plaintiff, her attorneys, agents, officers, employees, successors, assigns and any and all persons acting directly or indirectly in concert with her should be restrained and enjoined from selling or leasing lots in Lake Run-A-Muck, Old Snake River, Wayward Wind and Natasha Heights Subdivisions and from using any means or instruments of transportation or communication in interstate commerce, or the mails, to sell or lease lots in Lake Run-A-Muck, Old Snake River, Wayward Wind and Natasha Heights Subdivisions without satisfying the requirements of the Interstate Land Sales Full Disclosure Act.

28.

Plaintiff was selling or offering to sell lots in Corrigan Heights, Crystal Lakes,

Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions on March 31, 1972, without an effective registration with Defendant Lynn, Secretary of Housing Urban Development. Said subdivisions were exempt under all statutory and regulatory exemptions prior to March 31, 1972.

29.

On March 31, 1972, said Subdivisions of Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout each had less than 299 lots, and sales were limited to less than five (5%) per cent in any one year to nonresidents of the State of Texas.

30.

Plaintiff, her attorneys, agents, officers, employees, successors and assigns should be required to comply with the registration requirements of the Act and the Rules and Regulations issued pursuant thereto with regard to Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions.

## CONCLUSIONS OF LAW

1.

This Court has jurisdiction over the subject matter and the parties because of diversity of citizenship between the parties and a federal question has been raised pursuant to 28 U.S.C. Section 1331.

2.

At all times pertinent to this action there was in full force and effect an act of the Congress of the United States referred to as the Interstate Land Sales Full Disclosure Act, 15 U.S.C., Section 1701 *et seq.*, which Act became effective on April 28, 1969.

3.

The Act provides that it shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails, to sell or lease any lot in any subdivision unless a statement of record with respect to such lot is in effect in accordance with provisions of the Act, and a printed property report, meeting requirements set forth in the Act, is furnished to the purchaser in advance of the signing of any contract or agreement for sale or lease by the purchaser.

4.

The Act permits the Secretary of Housing and Urban Development ("the Secretary") from time to time, pursuant to rules and regulations made by him, to exempt from any of the provisions of the Act any subdivision or any lots in a subdivision, if the Secretary finds that the enforcement of the Act with respect to such subdivision or lots is not necessary in the public interest and for the protection of purchasers by reason of the small amount involved or the limited character of the public offering.

5.

The Act permits the Secretary, from time to time, to make, issue, amend, and rescind such rules and regulations and such orders as are necessary or appropriate to the exercise of the functions and powers conferred upon him by the Act.

6.

In 1969, pursuant to the authority of Section 1702(b), the Secretary issued certain regulations referred to as Section 1710.10(1), Title 24, Code of Federal Regulations which exempted from the operation of the Act the sale or lease of lots where the offering was entirely or almost entirely intrastate.

7.

On January 27, 1972, the Secretary issued new regulations deleting the old

Section 1710.10(1) and creating a new Section 1710.14 exemption pursuant to his discretionary authority under Section 1702(b), which Section 1710.14 became effective March 31, 1972.

8.

Prior to March 31, 1972, Lake Run-A-Muck, Old Snake River, Wayward Wind, Natasha Heights, Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions were exempt from the provisions of the Act because the enforcement of the Act with respect to such Subdivisions was not necessary in the public interest and for the protection of purchasers by reason of the small amount involved or the limited character of the public offering.

9.

Subsequent to March 31, 1972, Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lakes Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions should be exempted from the provisions of the Act pursuant to the regulations issued by the Secretary referred to as Section 1710.14, Title 24, Code of Federal Regulations, under his discretionary authority set forth in Section 1702(b) of the Act.

10.

■ The Plaintiffs, her attorneys, agents, officers, employees, successors, assigns and any and all persons acting directly or indirectly in concert with her are restrained and enjoined from selling or leasing lots in Lake Run-A-Muck, Old Snake River, Wayward Wind and Natasha Heights Subdivisions, and from using any means or instruments of transportation or communication in interstate commerce, or the mails, to sell or lease lots in Lake Run-A-Muck, Old Snake River, Wayward Wind and Natasha Heights

Subdivisions without satisfying the requirements of the Interstate Land Sales Full Disclosure Act.

11.

■ Plaintiff, her attorneys, agents, officers, employees, successors and assigns should not be required to comply with the registration requirements of the Act and the Rules and Regulations issued pursuant thereto with regard to Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions.

## ORDER MODIFYING CONCLUSIONS OF LAW AND JUDGMENT

On this date, came for consideration the Motion for Modification of the Conclusions of Law and Judgment, filed jointly by the Plaintiff and the Defendants herein, and after considering same, the Court is of the opinion the same should be granted. It is therefore,

Ordered, adjudged and decreed that the Conclusions of Law and Judgment of this Court entered in this cause on April 25, 1975, be modified as follows:

1. Paragraph 9 of the Conclusions of Law will read as follows: "Subsequent to¹ March 31, 1972, Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lakes Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions may be exempted from the registration provisions of the Act pursuant to the regulations issued by the Secretary referred to as Section 1710.14, Title 24, Code of Federal Regulations, under his discretionary authority set forth in Section 1702(b) of the Act."

2. Paragraph 11 of the Conclusions of Law will read as follows: "Plaintiff, her attorneys, agents, officers, employees, successors and assigns should be required to comply with all the exemption re-

quirements of Section 1710.14, Title 24, Code of Federal Regulations, or the registration requirements of the Act and the Rules and Regulations issued pursuant thereto with regard to Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions."

3. The first full paragraph on the 4th page of the Judgment will read as follows: "The Court further finds that Plaintiff was selling or offering to sell lots in Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions on March 31, 1972, without having an effective registration with the Secretary of Housing and Urban Development pursuant to said Act. On said date of March 31, 1972, said Subdivisions of Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout each had less than two hundred ninety-nine (299) lots, each of said subdivisions was located entirely within Texas, the offering of lots in each of said subdivisions was entirely or almost entirely limited to Texas, that the advertising and promoting each of said subdivisions was confined to Texas, and less than five (5%) per cent of the sales in each of said subdivision in any one year was made to nonresidents of Texas. However, the lots were sold collectively as part of a common promotional plan containing more than 300 lots and the Plaintiff did not seek an exemption order pursuant to Section 1710.14, Title 24, Code of Federal Regulations."

4. The second full paragraph on Page 4 of the Judgment will read as follows:

"It is, therefore, ordered, adjudged and decreed that Plaintiff, her attorneys, agents, officers, employees, successors and assigns should be required to comply with all the requirements of Section 1710.14, Title 24, Code of Federal Regulations or the registration requirements of the Act and the Rules and Regulations issued pursuant thereto with regard to Corrigan Heights, Crystal Lakes, Eagles Nest, Hoot Owl Hollow, Horseshoe Lake Estates, Nugent's Cove, Old Stag Ridge, Putnam's Landing, Sam Houston, Thunder Mountain, Town Bluff, Weaver's Cove, Wild Country and Hardin's Hideout Subdivisions."